TWO THOUSAND BUSHELS OF WHEAT (UNITED STATES v.). See Case No. 16,-589.

## Case No. 14,303.

### TWO THOUSAND TIN CANS.

[7 Ben. 34.] [1]

District Court, E. D. New York.   Oct., 1873.

FORFEITURE—IMPORT ACTS— RELANDING GOODS INTENDED FOR EXPORT—INTENT TO DEFRAUD.

1. Goods on board a ship, which had been entered for exportation under the act of 2d March, 1799 (1 Stat. 692), but for which no bond had been given, as provided in the 81st section of that act, and no debenture issued, were put on board a lighter alongside the ship. They were seized as forfeited under the 81st section of the act, as having been relanded. A verdict in favor of the government having been directed, in a suit brought to enforce the forfeiture, the claimant made a motion for a new trial: Held, that the discharge of the goods into the lighter amounted to a landing of them, within the meaning of the 82d section of the act. See Rev. St. § 3049.

[Cited in Kidd v. Flagler, 54 Fed. 369.]

2. A landing in the port of exportation, before the ship had broken ground, was within the act.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

3. The forfeiture attached, although the bond had not been given nor the debenture issued.

4. Evidence that the claimant caused the goods to be relanded simply to correct a mistake which had arisen between merchants, whereby he had been led to enter for export a different quality of goods from that intended to be exported, afforded no defense.

5. An intent to defraud the government is not required for a forfeiture of goods relanded contrary to this act.

At law.

A. W. Tenney, U. S. Dist. Atty., for the United States.

R. H. Hollis, for claimant.

BENEDICT, District Judge. This was a proceeding to forfeit certain tin cans entered for exportation, which, it is claimed, became forfeited by virtue of section 82 of the act of 1799 (1 Stat. 692), because of a subsequent relanding thereof within the limits of a port or place within the limits of the United States. The entry of the goods for exportation was proved, and their inspection on board the outward bound vessel and the return of the inspector made to the effect that the goods described in the entry were actually laden for exportation on board the bark H. D. Stover, and the same so marked by the inspector.

It was also proved, that afterwards, and before the vessel sailed, the goods were found in a lighter lying alongside the vessel in which they had been shipped, where they were seized by the collector, and this proceeding thereupon instituted. On the trial of the cause, certain questions of law were ruled on, and a verdict directed in favor of the government. The correctness of these rulings has been called in question by a motion for a new trial, and they are now before me for re-examination.

The first question presented is whether the discharge of the goods from the ship to a lighter alongside amounts to a landing "within any port or place within the limits of the United States," within the meaning of section 82 of the act of 1799.

The correctness of the ruling, that such a discharge constituted a landing within the meaning of the act, was not seriously doubted on the trial, nor has the objection been seriously pressed upon this motion. My opinion is, that the ruling is correct.

The next question raised is, whether a landing in the port of exportation, before the ship has broken ground, is within the act? As to this, I am at a loss for any reason to sustain the position that such a landing is not within the act.

The next position taken by the defense is, that the forfeiture created by the 82d section cannot attach to these goods, because the bond prescribed in the 81st section had not been given, and no debenture had been issued. This position is untenable. The entry of these goods had been completed. Under the law, the claimants, by virtue of

what had been done, had the right at any time within ten days after the clearance of the vessel to give their bond and receive their debenture certificate. The bond prescribed in the 81st section is intended as an additional security against a relanding, but has no such connection with the entry of the goods as to suspend the operation of section 82 until it be given.

The wide door for fraud which would be opened by permitting a relanding of goods, entered and returned by the inspector as laden on board a ship for export, at any time prior to the giving of the bond, forbids such a construction of the law.

The remaining and principal question of the case is, whether the claimant can defeat the operation of sec. 82, by evidence to the jury that he caused the goods to be relanded simply to correct a mistake which had arisen between merchants, whereby the claimant had been led to enter for export a different quality of goods from that intended to be exported. The ground taken is that such proof would repel the idea of any intent to defraud the government of the duties; and that inasmuch as the law provides no method of obtaining a permit to release goods, once entered for exportation, a relanding under such circumstances must make the case one of necessity and involuntary, so far as the owner of the goods is concerned.

The government having proved the entry, lading and inspection of the goods, and their subsequent relanding by the owners thereof, within the limits of a port or place within the limits of the United States, a case for forfeiture was made out. An intent to defraud the government of the duties is not required by the statutes to be an element in the case.

An intent to reland is proved by the act of relanding which the owners committed. And this was a voluntary act on their part, done, it may be to save themselves from loss, but nevertheless done in violation of law, and it worked a forfeiture of the goods under the act.

The cases of necessity cited, have little application here. This was no case of necessity.

To permit circumstances such as are relied on here, to be given in evidence to justify and explain a relanding of goods entered for exportation for the benefit of drawback, would afford opportunity for the concealment of frauds against which the government would have no means of protection. It was, doubtless, for this reason, that an intent to defraud of the duties was not made an element in the case.

My conclusion, therefore, is, that no error has been committed in directing the verdict. The motion for a new trial must be denied.

TWO TONS OF COAL (UNITED STATES v.). See Case No. 16,590.